HAYNAY ET AL., D. B. A. HAYNAY'S GREENHILLS LANES, APPELLANTS, *v.* BOARD OF LIQUOR CONTROL ET AL., APPELLEES.

(No. 5090—Decided September 24, 1954.)

*Messrs. Cors, Scherer, Hair & Hartsock* and *Mr. Louis J. Schneider, Jr.,* for appellants.

*Mr. C. William O'Neill,* attorney general, and *Mr. Kiehner Johnson,* for appellees.

MILLER, J.   This is an appeal on questions of law from a judgment of the Common Pleas Court affirming an order of the Board of Liquor Control sustaining the department in denying the appellants a transfer of their D-1 liquor permit from a location in the city of Cincinnati to the village of Greenhills, an incorporated subdivision, in Hamilton County, Ohio.   The grounds for the rejection were based upon regulation No. 64 issued by the board and under which it was found the number of D-1 permits was frozen at two, and that this number had previously been granted.   The appellants contend that the aforesaid regulation con-

tains an exception with reference to the transfer of permits under regulation No. 14 and that they come within this exception.

These sections provide:

"Resolution No. 64: Section II-(2) The number of C-1, C-2, D-1 and D-2 permits which may be issued within the state of Ohio and within each political subdivision thereof is hereby limited to a figure which shall be equal to the number of C-1, C-2, D-1 and D-2 permits issued and outstanding in the state of Ohio and in each political subdivision thereof as of June 27, 1952, plus the number issued pursuant to applications on file on or before June 27, 1952. Where an application for C-1, C-2, D-1 or D-2 permit was filed prior to June 27, 1952, and subsequent to December 18, 1951, or on or before April 11, 1949, and said application was during the period between December 19, 1951, and June 27, 1952, cancelled or rejected by the department for any reason, the refiling of such an application by the same applicant for the same type of permit or permits for the same location as originally applied for shall be considered and treated as though filed on the same date as the original application as filed.

"No new C-1, C-2, D-1 or D-2 permits shall be issued except permits issued pursuant to Section II, Regulation 64 or except permits issued pursuant to Regulation 14 and also except new permits issued upon the expiration of any existing permits to the same permit holder for the same location."

"Regulation No. 14: The holder of a permit issued by the department may transfer such permit from one location to another by making written application for such transfer to and securing the approval of the department of the same, except that no application for transfer shall be accepted unless filed with the de-

partment at least forty-five (45) days prior to the expiration of the permit.

"Permits may be transferred from the holder thereof to another qualified person, firm, partnership or corporation at the same location or another location when such transfer is in connection with a bona fide sale of the business and assets of such permit holder, or in dissolution of a corporation or partnership. In the event that such transfer is neither approved nor rejected within fifteen (15) days prior to the expiration of the permit, the permit holder transferror need not file an application for renewal. In such cases, if the transfer is rejected by the department or if the permit expires, the permit holder transferror shall then file an application for renewal forthwith.

"Provided, further, that permits may be transferred in case of death, bankruptcy, receivership, guardianship or assignment for benefit of creditors of such permit holder, or in case of a corporate reorganization under federal Bankruptcy Act, and in case of a property settlement between husband and wife, and in case of the transfer of the business to a corporation or partnership organized by a permit holder or between immediate members of a family, or dissolution of a corporation or partnership and distribution of assets to stockholders or partners."

It will be noted that the exception under regulation No. 64 provides that no new permits shall be issued except pursuant to section II thereof and also except permits issued pursuant to regulation No. 14. This exception, being indefinite and uncertain, requires construction in order that it may be harmonized with the obvious purpose of the regulation which is to limit the number of permits as of June 27, 1952. The general rule in regard to construction of exceptions is found in 37 Ohio Jurisprudence, 781, Section 453:

"Statutory exceptions to the operation of laws, especially if such laws are entitled to a liberal construction, should receive a strict, but reasonable, interpretation. In the absence of direct language, they should not, it has been declared, be carried further than the spirit of the law requires, or enlarged from considerations of apparent hardship or inconvenience."

The regulation deals with the limiting of permits and the establishment of a certain number in each political subdivision. The exception does not by its terms take the transfer of permits out from the general "freeze" regulation but excludes it from the prohibition of issuing any new permits. The appellants urge that this exception removes the transfer of permits from the "freeze" order. Such a construction would enlarge the exception and result in a liberal construction in the absence of any language leading to that conclusion. It would render ineffective the limitation on the issuance of permits. The rule of construction pertaining to the harmonizing of statutes to get a consistent whole should also be considered. This rule is quoted in 37 Ohio Jurisprudence, 620, Section 342:

"Consistency in statutes is of prime importance, and it is the duty of the court to attempt to harmonize and reconcile laws. That is, a statute or section should, if possible, be so construed as to harmonize and reconcile its provisions with other laws or sections so that all of them may stand. Accordingly, the rule is that all laws newly enacted by the General Assembly must be presumed to harmonize with existing statutes on kindred subjects neither expressly nor impliedly repealed. Moreover, a construction of a statute which destroys the consistency thereof is to be avoided. The statute should, if possible, be so construed that its

different parts are in harmony so as to render it a consistent and harmonious whole in subserviency to a common policy. These rules are based upon the presumption, or inference, that the Legislature intended to be consistent and harmonious in the making of laws. This would be especially true where the statutes become effective on the same date or where the Legislature declares in the title of an act that its purpose and intent is to harmonize the laws relating to the subject.''

The construction asserted by the appellants would not be in accord with these general rules of construction. Under their view a transfer of permits should be permitted to any political subdivision in Ohio at the will of the owner. Such transfer would be regardless of the ''freeze'' quota established within each municipal corporation or political subdivision. We think such a construction is not only against the intent of the regulation but also contrary to the literal language of the first paragraph of section II. It would allow an increase in the number of permits issued in Ohio and in this way permit a contravention of the regulation by allowing unlimited transfers. Upon the transfer of a permit from one corporate subdivision there would then be a place open for a new permit under the regulation since permits would not have been issued up to the number allowed by the ''freeze'' order. Thus the number of permits issued in Ohio would be increased contrary to the ''freeze'' regulation which limits the number of permits ''within the state of Ohio.'' Under the unrestricted transfer of a permit to a different municipality there then might also be in existence permits in excess of the statutory quota found in Section 4303.29, Revised Code, as well as in violation of regulation 64, *supra*. The Board of Liquor Control, by the promulgation

of the regulation, we think, indicated their opinion that the state of Ohio and each of its political subdivisions were adequately served as of the date specified. To allow unrestricted transfers would abrogate this administrative determination. We think that the order of the Director of Liquor Control was in accordance with the law, and the judgment of the Common Pleas Court is, therefore, affirmed.

*Judgment affirmed.*

WISEMAN, P. J., and HORNBECK, J., concur.